Mr. Justice Wylie
delivered the opinion of the court.
Robert C. Hewett and Thomas Lewis were contractors under the District government some years ago. Lewis held *11 the contract in his name, but Hewett was interested as a partner.
On the 31st of July, 1815, having closed their work under their contract, they had a settlement, and the property was divided, each one taking his own share and they interchanged receipts, Hewett receipting to Lewis for his share and Lewis receipting to Hewitt for his share. ' It was a final settlement with the exception that both receipts reserved the right of the parties in collections that might afterwards be made, on account of their contracts, from the District government, and when collected they were to be divided. There was no reservation in these receipts as to any property except these collections to be made from the District government, and, except as to them, they purport on their face to be a final settlement.
This was on the 31st of July, 1875. Thomas Lewis died in 1880, five years afterwards. In 1883, the bill was filed against the administrator of Thomas Lewis on the part of Hewett, praying for an account and a decree of one-half of the proceeds of a lot of tools amounting to over $2,700 in value which the complainant avers had not been disposed, of, and that Lewis retained at the time of the settlement, and it is claimed that those tools did not enter into' this settlement. The bill was filed nearly seven years after the settlement, and nearly three years after Lewis’ death.
There has been a good deal of testimony taken in the case, mainly on the part of the complainant; and the strongest evidence in favor of the complainant in regard to these tools is that given by a witness named Hamilton. Hamilton was the complainant’s bookkeeper, and he testifies that according to his understanding at the time, although he is not very positive about it, that these tools did not enter into the final settlement. But he testifies that in the fall of the year or in the early part of 1876, soon after the final settlement was made, that he had a conversation with Lewis in a saloon on Fifteenth street, in which Lewis told him that the partnership affairs had all been settled with the exception of the tools, and that Lewis seemed to be very much pleased that the business had been so settled.
*12 Now it is sought, principally in consequence of this admission, to open this settlement and require an account on the part of these defendants mainly on that proof. As to the credit to be given to these admissions, it is laid down in section 200 of Greenleaf’s Evidence, Vol. I, as follows:
“With respect to all verbal admissions, it may be observed that they ought to be received with great caution, the evidence consisting, as it does, in a fuere repetition of oral statements, is subject to much imperfection and mistake, the party himself either being misinformed or not having clearly expressed his own meaning or the witness having misunderstood him. It frequently happens also that the witness, by unintentionally altering a few expressions really used, gives an effect to the statement at variance with what the party actually did say.”
So that we think that the written contract of the parties ought not to be disturbed in this case by these admissions proved in that way and in that place. They might have been misunderstood. The omission of a few words might have changed the whole meaning, and it is not safe to overthrow the written agreements of parties by testimony of so weak a kind as admissions of this sort, the testimony concerning which is taken many years after the occurrence. On that ground aloné we are of opinion that this bill ought to be dismissed.
But then there is the defence of the Statute of Limitations. ■ It is said that here was a trust; here was a partnership continued as to this, and that no Statute of Limitations runs in such a case. But our statute says :
“All actions of trespass quare clausum fregit, all actions of trespass, detinue, surtrover or replevin for taking away goods or chattels, all actions of account, contract, debt, book or upon the case, other than such accounts as concerns the trade or merchandise between merchant and merchant, their factors and servants which are not residents within this province, all actions of debt for lending or credit without specialty, all actions of debt .for arrearages of rent, all actions of assault, menaces, battery,, wounding and impris *13 onment, or any of them, shall he sued or brought by any person or persons within this province, at any time after the • end of this present session of assembly, shall be commenced or sued within the time-and limitation hereafter expressed and not after; that is to say, the said actions of account and the said actions upon the case, upon simple contract, book debt or account, and the said actions for debt, detinue, and replevin for goods and chattels, and the said actions for trespass quare clausum fregit, within three years ensuing the cause of such action and not after.”
Here is a statute which bars the action of account in three years except as to accounts between merchant and merchant, and there is no pretense that this is an action between merchant and merchant. There are no books. The whole foundation for the claim in this case is a promise on the part of Lewis as alleged to account for this property.
A case very similar to this is that of Codman vs. Rogers in 10 Pick., 112, where it is said — I read from the syllabus :
“A bill in equity for an account alleging a partnership between two by indenture, and a dissolution by the death of one of the partners, and a parol promise by the survivor to account to the plaintiff as executor of the deceased partner. It was held that the suit was not founded upon the indenture, but upon the subsequent parol contract, and, therefore, that the Statute of Limitations might be pleaded in bar.”
That was a case where one of the partners had died, and the surviving partner promised the executor of the deceased partner to account for certain partnership property, and it was held that that was a case within the statute.
In Collyer on Partnership, section 314, it is said:
“ The Statute of Limitations is a good plea in bar of a suit against the representatives of a deceased partner for an account, if there have been no dealings within six years before the filing of the bill and no admissions on the part of the testator or the representatives to take the case out of the statute.”
Our limitation is three years between partners, and the *14 doctrine there is that between partners with no dealing between them, as is the case here, they are regarded as strangers. The moment the partnership ceases, the partners become tenants in common of the partnership property. This is laid down in section 545 of the same work, citing Murray v. Munford, 6 Cowen, 441.
Where an action of account would lie at law and instead of an action at law being brought a resort is had to a bill in equity, the Statute of Limitations is just as imperative as it isc in a case of an action at law.
In Kane vs. Bloodgood, 7 Johns. Rep., 111, Chancellor Kent says, at p 114:
“The trusts which are not reached or affected by the Statute of Limitations are those technical and continuing trusts which are not at all cognizable at law, but fall within the proper, peculiar and exclusive jurisdiction of courts of equity.”
Then, at page 117, of the same case, he says:
“The statute is a bar to any demand from one tenant in common against another for an account further back than six years.”
And at page 118 he says:
“ Where there is a legal and an equitable remedy in respect to the same subject matter, the latter is subject to the same control of the statute as the former.”
On page 122 of the same case and in Story's Equity, vol. II, § 1520, is the same principle. In the case just cited Kent overrules his own decision made a few years before in the case of Coster vs. Murray, reported in 5 Johns, Kep., 522.
It is an interesting discussion in regard to this question as shown in these two cases. In the case of Coster vs, Murray, at page 521, he says:
“The other ground, taken by the plaintiffs’ counsel appears to me to be decisive, in their favor, and to take the case out of the statute, without having recourse to a proviso, which, if originally clear upon the text itself, has been rendered perplexed and litigious, by the commentaries of *15 counsel, and the contradictory doubts and decisions of courts.
If there was a trust created in the defendants, to account as agents or trustees, for these goods, or the avails thereof, the case is not within the statute, for that does not reach to matters of direct trust as between trustee and cestui que trust. (Vide the cases referred to in 1 Eq. Cas., Abr., 303, A, and 3 Johns. Ch. Rep., 216, 222.) It appears very clearly that here was a trust, a deposit to be accounted for. The defendants assumed the charge and direction of the goods in which the Columbian Insurance Company had an interest to one-third part. They became the agents or factors of the company, as to the amount of their interest, and were entitled to their reimbursement and indemnity for all charges and expenses incurred by them in the execution of the trust. The defendants were to have no commissions if they sold the goods, and the deposit with them was in the nature of a gratuitous bailment or trust. The parties were not partners, and accountable for each other’s acts. They had respectively their aliquot shares of the cargo, shipped by the defendants from Copenhagen, and the latter had the possession and control of the entire interests of both parties, and assumed the direction and disposition of the whole, and were to account to the company for their proportion of the procéeds. This was a plain case of trust. The parties stood not in the relation of debtor and creditor, or of joint partners in trade, but in the relation of agent or factor and principal, and the Statute of Limitations does not apply to the case. In Godfrey vs. Saunders, 3 Wils., 94, the defendant was sued in an action of account, as factor. He pleaded the Statute of Limitations, that there was not any open account between them within six years. The plaintiff replied, that he was a merchant, and the defendant his factor, and had, the care of goods to render an account, and that the account concerned trade and merchandise, and was never adjusted. The defendant rejoined that the account did not concern trade and merchandise. Upon the trial this issue was given up by the defendant’s counsel, and the jury found for the plaintiff, and there was a judg *16 ment quod computet. This is a case showing clearly that a factor is responsible upon an open account, though not within six years.”
The nature of the case will be seen from the opinion as far as I have read. Now'let us see what the chancellor says in Kane vs. Bloodgood, 7th Johns. Ch., 91, a case which was very fully argued, and which contains one of the chancellor’s most elaborate opinions. Referring to the case of Coster vs. Murray, he says at page 128:
“In the still more recent case of Coster vs. Murray, 5 Johns. Reps., 522, I referred generally to what was said by me in the preceding case, that the statute did not reach to matters of direct trust, as between trustee and cestui que trust; and I held that the statute did not apply to the case of a gratuitous bailment or trust. But though that decree was affirmed in the Court of Appeals, yet, I understand, it was upon other ground than that upon which I had rested the decree, and that the judges of the Supreme Court did not consider it as the case of a trust not within the reach of the statute, because an action at law, of account, or for money had and received, could have been sustained for the same matter, and the equitable remedy, in a case of concurrent jurisdiction, was subject to the same limitation as the legal. If I am not misinformed as to the decision, (for the case has not, as yet, been reported,) it is a decisive authority, in favor of the doctrine which I have now endeavored to deduce from the history of the cases; and it was the discussion upon the appeal in that very case, that led me to suspect that I had been misled by some of the earlier decisions, in the time of Charles II, on which I have now ventured to comment freely, and by the exceedingly loose manner in which the rule as to trusts, had been spoken of in the books.”
After the dissolution of the partnership where the agreement is that one partner shall have the exclusive possession of a certain portion of the assets to dispose of, the right in the property is changed. During the partnership each has the same rights as the other in disposing of the *17 property. After the dissolution of the partnership, there is nothing left except such agreement as may be made and which will hind the parties hy its terms. The relation of the parties is changed. After a partnership is dissolved the partners become tenants in common in the property if there is no agreement *to the contrary. But in this case these parties were not even tenants in common, because, if we believe the bill, this property was placed in the hands of Lewis to be disposed of and the proceeds to be accounted for to the other, and in that respect it is like the case of Kane vs. Bloodgood. • As to the Statute of Limitations, wherever an action at law would lie, it is just as obligatory in courts of equity as in the courts of law. The statute begins to run from the date of the contract. There is nothing in the exceptions to the statute regarding merchants’ accounts which would take this case out of its operation, because there are no accounts between the parties. The last entry in the partnership hooks between these parties was in April, 18T5, in regard to this very item. This action of account might have been brought within a week after the arrangement was entered into, if there was such an arrangement, and parties cannot be held forever in a case like this without protection, especially after one of the parties is dead, and an administrator, knowing nothing about the circumstances, is made the defendant.
In Story’s Equity, vol. I, section 662, the author says:
“The most extensive and generally the most operative remedy at law between partners is an action of account. This is the appropriate, and, except under very peculiar circumstances, the only remedy at the common law for the final adjustment and settlement of partnership transactions. It is a very ancient remedy between parties in which one naming himself a merchant may sue his partner for a reasonable amount, naming him a merchant, as the receiver of the moneys of himself, arising from whatever cause or contract, for the common profit -of both according to the law merchant.”
In place of the action of account at common law the remedy *18 most in use is- a bill for an account, but where the' remedies are concurrent, the common law remedy and the equity remedy, the statute is- a bar in both cases, and it does not remain with the court, according to its discretion, to apply the statute or dispense with it as they may thinlr proper and as may he done in some other cases.
If this is to be regarded as partnership property, and if the partnership is to be regarded with respect to this property, an action of account would lie by one of the parties against the other, the one naming himself as a merchant, and the other as a merchant having mutual accounts. But in this case there are no mutual accounts. The statute, therefore, runs from the beginning, and that disposes of the matter. ■
I have expressed largely my own views in what I have said in regard to this case, but none of us entertain the slightest doubt about what the decree in the case should be, and that is- that the bill should be dismissed.